# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN (JACKSON) DIVISION

**SHERRY LYNN YORK**                                                                      **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO.  3:13CV918 HTW-LRA**

**CAROLYN W.  COLVIN.**
**ACTING COMMISSIONER OF SOCIAL SECURITY**           **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Sherry York, proceeding *pro se*, appeals the final decision denying her Title II application for a period of disability and disability insurance benefits.  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed for the reasons that follow.

## Factual and Procedural Background

On November 17, 2009, York protectively applied for disability benefits alleging that she became disabled on March 4, 2005, due to arthritis and fibromyalgia.  She was 59 years old at the time of filing and is a high school graduate, with previous work experience as a data-processing supervisor and welding supplier.  The claim was denied initially and on reconsideration.  On February 11, 2011, Administrative Law Judge Louis J. Volz, III ("ALJ") rendered an unfavorable decision, finding that Plaintiff had not established a disability within the meaning of the Social Security Act.  The Appeals

Council denied Plaintiff's request for review and she now appeals that decision.

After reviewing the evidence, the ALJ determined at step one of the five-step sequential evaluation that Plaintiff had not engaged in substantial gainful activity from her alleged onset date, March 4, 2005, through her date of last insured, December 31, 2008. At step two, the ALJ found that although Plaintiff's arthritis was a medically determinable impairment, it was not medically severe through her date last insured. Based on the evidence as a whole, the ALJ concluded that Plaintiff failed to establish a disability under the Social Security Act before her insured status expired.

## Discussion

Plaintiff does not assert any specific assignments of error on appeal, but generally contends that the ALJ erred in denying her application for benefits. Liberally construed, Plaintiff asserts that she suffers from severe musculoskeletal pain throughout her entire body due to arthritis and fibromyalgia. She claims this causes, *inter alia*, a loss of neck movement, muscle spasms, numbness and tingling in her upper and lower extremities, finger and foot deformities, severe headaches, bone spurs, anxiety, and depression. As a result, Plaintiff alleges that she has difficulty sleeping, and is unable to perform daily activities or attend to her personal hygiene without her husband's assistance. She also alleges that her mental impairments were not fully evaluated because her counsel failed to submit all of her medical records for the ALJ's consideration. In support, Plaintiff submits medical records from Weems Community Mental Health Center documenting her

treatment from December 2010 through April 2013.[1]

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

A claimant's entitlement to disability benefits hinges on whether he can establish his inability "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at 435 (quoting 42 U.S.C. §§ 416(i), 423(d)(1)(A)). The Commissioner reviews the evidence of disability offered by

---

[1] ECF No. 16, pp. 1-5; 16-1, pp. 1-20.

the claimant and evaluates the evidence by using a sequential evaluation.[2] The burden of proof on the first four steps falls on the claimant; the burden of proof on the last step -- whether a claimant can perform work existing in significant numbers in the national economy -- rests with the Commissioner. Significantly, the Commissioner only has the burden of proof at step five, while the claimant has the burden of making the threshold showing that the impairment is medically severe at step two. If the ALJ finds that the claimant is disabled or is not disabled at any step in the evaluation, the analysis is terminated.

Applying the severity standards set forth in *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985) and 20 C.F.R. § 404.1521, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that were medically severe during the relevant period for a period of 12 consecutive months. In making this determination, the ALJ carefully considered Plaintiff's subjective complaints and the medical evidence from March 2005 through January 2011. The ALJ found that while Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, her statements regarding their intensity, persistence, and limiting effects did not credibly establish that they were

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantially gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

medically severe. When a claimant's statements concerning the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's determination is entitled to considerable deference and is supported by substantial evidence here.

Relative to Plaintiff's physical impairments, the record substantially supports the ALJ's determination that fibromyalgia was not clinically indicated from her alleged onset date of March 4, 2005, through her date last insured, December 31, 2008. As such, it cannot serve as the basis for a finding of disability, and any argument to the contrary is without merit. *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985) ("Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability."). However, the objective evidence does confirm that Plaintiff was diagnosed and treated for degenerative changes in her cervical spine and arthritis in her left knee during the relevant time period. The only question for this Court to answer is whether substantial evidence supports the ALJ's finding that these impairments did not alone, or in combination with other impairments, significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. A diagnosis alone is insufficient to establish a severe impairment or disability. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not

5

severe if it is a slight abnormality . . . that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson v. Astrue*, 387 F.App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101).

In assessing her credibility, the ALJ noted that Plaintiff's statements at her administrative hearing did not "fully comport with the facts and findings set forth in the objective evidence." She testified that her left knee was injured when she slipped and fell in a restaurant on her alleged onset date, March 4, 2005, but emergency room records indicate that the accident actually occurred on March 4, 2006, a year later.[3] Records from 2005 indicate that Plaintiff underwent physical therapy following a car accident in April of that year. She reported residual pain in her cervical spine and left upper trapezius along with burning and pinching sensations. By May 2005 she had returned to her prior level of functioning and was discharged from therapy without pain. Afterwards, she reported only occasional discomfort but no pain. After her slip-and-fall in 2006, x-rays indicated "mild spurring in the lower thoracic spine and mild spondylosis in the cervical spine," but "no acute trauma or osseous injury." MRIs taken in January 2006 and May 2006 showed multilevel degenerative changes and disc spur complexes throughout her cervical spine with no acute cervical injury. Plaintiff's resulting treatment was conservative and lasted approximately four months. From July through August 2006, she

---

[3] The Court would further note that Plaintiff initially made statements in her administrative filings and consultative examination that she stopped working because she moved to another state and never looked for another job. ECF No. 13, pp. 33, 205, 234.

received steroid injections with "good partial improvement." She also continued to receive physical therapy until October 2006 and was noted to be doing "pretty well."[4]

Emergency room x-rays of Plaintiff's left knee following her slip-and-fall similarly revealed "no acute trauma." However, she continued to experience left knee pain. In April 2006 Dr. Charles Roth diagnosed her with underlying arthritis aggravated by a recent injury. In May 2006 a MRI of her left knee confirmed "significant degenerative arthritis in the knee joint space" but no discrete tears in her ACL. Examination findings indicated Plaintiff had a normal gait with bilateral patellofemoral crepitation, but her overall joint space was intact. As treatment, Plaintiff received three injections in her left knee in August 2006 and was not seen again until October 2006. When she returned, Plaintiff reported that her knee was "still bothering her on and off, but not nearly to the extent it had been." On examination, she had a normal gait with some patellofemoral crepitation and no warmth or effusion in the knee. The impression was that she would have continued improvement following her injections. Yet, she was not seen again until April 2007, some six months later, and reported that her knee was worse than before the injections. On examination, she had minimal knee effusion and x-rays revealed moderate to severe osteoarthritic changes. She was advised that she would be a candidate for an arthroplasty, but the record does not show that such a procedure was performed during the relevant evaluation period. Records indicate that Plaintiff had no apparent medical

---

[4]ECF No. 13, pp. 18-21, 235-286, 319-345.

treatment of any kind for over a year.[5]

In May 2008, Plaintiff was examined by Dr. Richard A. Conn with Southern Bone & Joint Specialists, PA. Examination findings indicated that Plaintiff had a good range of motion in her hip and full mobility in her knee. She had "some retropatellar crepitation and pain and some mild subluxation of the patella," but her collateral ligaments were strong with no gross atrophy. She was prescribed pain medication and did not return until April 2009, after her insured status expired. While objective examination findings indicated, *inter alia*, a full range of motion, stable collaterals, and good pulse sensation, Plaintiff reported a burning pain in her knee and asserted that it tended to "lock, catch, and give way with recurrent swelling."[6] Despite Plaintiff's report, her treatment just before and after her insured status expired, as the ALJ noted, was as follows:

> In October 2008, just two months before the date last insured, claimant established primary care at Hattiesburg Clinic. Relative to claimant's complaint of pain, the physician noted, "Generally, it is under reasonable control with just occasional PRN (as-needed) use of Lortab. She states that she needs this about two times per week." Clinic records from February 2009, two months after the date last insured, indicate that claimant had no joint abnormalities. There was good free range of motion with no pain in the bilateral shoulders, elbows, wrists, hips, and knees. Gait and reflexes were found to be normal. ***The undersigned finds that the medical indications pertaining to claimant's knee just prior to the date last insured describe a need for only occasional medication to address occasional pain.***[7]

---

[5]ECF No. 13, pp. 232-253, 346-353.

[6]*Id*. at 177-181.

[7]*Id.* at 19 (internal record citations omitted)(emphasis added).

8

While Plaintiff maintains the ALJ should have reached a different conclusion, substantial evidence supports his non-severity findings. Although the record confirms degenerative spinal changes and arthritis in her left knee, the medical evidence generated during the relevant time period reflects her conditions were responsive to intermittent and conservative treatment through her date last insured.

In addition, no examining or treating physician has ever opined that Plaintiff's impairments impacted her ability to perform work-related activities through the date of last insured. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). Although Plaintiff's treating physician, Dr. Randy Nance, opined in 2010 and 2011 that Plaintiff's impairments would preclude her from performing any gainful employment, the ALJ properly determined that his opinions were not entitled to significant weight because he did not have a treating relationship with Plaintiff prior to the date last insured.[8]

Given the evidence as stated, the ALJ reasonably concluded that Plaintiff's physical impairments did not impose more than a slight limitation on her ability to perform basic work-related activities before her insured status expired.

Substantial evidence also supports the ALJ's findings that Plaintiff's mental impairments were not medically severe through her date last insured. Medical records prior to December 2008 indicate that Plaintiff was treated with prescription medication

---

[8]ECF No. 13, pp. 354-360.

9

for anxiety and depression by her attending physicians but received no formal mental health treatment. A consultative psychological examination was consequently obtained by the Social Security Administration and performed by Dr. William Osborn in December 2009. Contrary to her hearing testimony and statements on appeal, Plaintiff advised Dr. Osborn that she independently cares for her personal needs and helps with household chores including grocery shopping. Her recreational activities included growing plants, eating out twice a week, attending sporting events, and occasionally gambling. She also reported trouble sleeping, but acknowledged that she "consumed nine servings of caffeine a day, went to bed at twelve midnight, and napped during the day." On examination, Dr. Osborn diagnosed Plaintiff with moderate dysthymia, or a depressive disorder, not otherwise specified, secondary to her physical impairments. He opined that Plaintiff could perform routine repetitive tasks, and interact with coworkers, receive supervision, and maintain concentration and attention without limitations. He also recommended that she join a local support group for people who suffer from arthritic conditions. A state agency consultant the following month similarly concluded that Plaintiff did not have a mental impairment that was medically severe or produced more than mild functional limitations. Both assessments substantially support the ALJ's finding that Plaintiff did not have a medically severe mental impairment through her date last insured.[9]

---

[9] ECF No. 13, pp. 20-21; 205-223.

Finally, the Court addresses the new evidence submitted by Plaintiff on appeal, which is liberally construed as a request for remand under the sixth sentence of 42 U.S.C.A. § 405(g). To warrant a sentence-six remand, "the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding." *Leggett*, 67 F.3d at 567 (quoting *Bradley v. Bowen,* 809 F.2d 1054, 1058 (5th Cir. 1987)). "Evidence that was 'not in existence at the time of the administrative . . . proceedings meets the 'new' requirement for remand to the Secretary.'" *Hunter v. Astrue*, 283 F. App'x. 261, 262 (5th Cir. 2008). To be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir. 1989) (quoting *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985)). There must also be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

Even if the Court were to find the evidence was new, Plaintiff fails to show good cause as to why her records from Weems Community Mental Health Center were not submitted during the administrative proceedings. "The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). While Plaintiff faults her former counsel for allegedly failing to submit her complete medical records, a former counsel's failure to submit

evidence is not good cause to justify remand. *Lister v. Astrue*, No. 3:10CVI436– BD, 2011 WL 4424390, at *8 (N.D. Tex. Sept.22, 2011). The records are also immaterial as they document Plaintiff's mental health treatment from December 2010 through April 2013, well after Plaintiff's date of last insured. At best, they are evidence of the deterioration of Plaintiff's previous non-disabling condition. As such, they may not provide justification for remand. *See, e.g.*, *Leggett*, 67 F.3d at 567.

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not impose more than a minimal effect on her ability to engage in basic work-related activities during the relevant period from March 4, 2005, through December 31, 2008. For this reason, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 24th day of February 2014,

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE